# K&L GATES

February 18, 2022

**VIA ELECTRONIC FILING AND FEDERAL EXPRESS**

Steven L. Caponi, Esq.
steven.caponi@klgates.com

T 302-416-7080

The Honorable Stephanos Bibas
United States District Court
For the District of Delaware

**Re:** *Elemica Inc. v. ecMarket Inc.;* C.A. No. 21-893-SB

Dear Judge Bibas:

  On behalf of Defendant, ecMarket, Inc. ("ecMarket"), I write in response to the Court's Order dated February 4, 2022 [Dkt. 23]. In that Order, Your Honor directed the parties to provide letter briefs to address whether the proposed amended complaint filed by Elemica, Inc. ("Elemica") "plausibly states a claim." The Court requested that the parties address, in particular, "whether Delaware law requires a facially derogatory statement as an element of injurious falsehood and, if so, whether Elemica points to such a statement." As discussed in detail below, Delaware law ***does*** require a facially derogatory statement as an element of an injurious falsehood claim, and Elemica fails to point to any such derogatory statement by ecMarket. Further, Elemica fails to allege the ***other*** required elements of an injurious falsehood claim. Count IV of the proposed Amended Complaint is futile. Still further, the remaining counts in the proposed Amended Complaint fare no better.[1] The Motion for Leave should be denied.

  **A. The New Allegations in the Proposed Amended Complaint and the Parties' Actual Contractual Relationship.**

  Elemica's proposed Amended Complaint relies exclusively on the few statements made in the "Olin Email" and the "DuPont Email." *See* Dkt. 18-1 ¶¶ 29-36. Those two e-mails include one or more of the following statements:

- Elemica's "Quick Link" service uses and/or requires ecMarket's Conexiom solution;
- The relationship between Elemica and ecMarket is ending in March 2022;
- When the relationship between Elemica and ecMarket concludes, the customer, *i.e.*, Olin or DuPont, will no longer be able to use the Conexiom solution through Elemica;

---

[1] Counts I and II of Elemica's proposed Amended Complaint are identical to Counts I and II in Elemica's original Complaint. ecMarket moved to dismiss those counts, and its Motion to Dismiss remains fully briefed and pending. As discussed *infra*, Count III of the proposed Amended Complaint (asserting a state law claim for an alleged violation of Delaware's Uniform Deceptive Trade Practices Act) also fails to state a claim against ecMarket.

- There is a possibility in the disruption in service to the customer when the Elemica/Conexiom relationship ends in March 2022; and
- The customer, *i.e.*, Olin and DuPont, can contract directly with ecMarket for the continued use of the Conexiom solution.

To place Elemica's claims and the two e-mails in the proper context, ecMarket will provide the Court with a complete and accurate picture of the parties' *actual* contractual relationship. In its original Complaint and proposed Amended Complaint, Elemica refers to the underlying Rollout Agreement (dated November 23, 2009) and the multiple addenda to that Agreement. *See* Dkt. 1 ¶¶ 14-23; Dkt. 18-1 ¶¶ 15-24. However, Elemica does not attach the Rollout Agreement or any of the addenda to its Complaint or proposed Amended Complaint. ecMarket previously filed a copy of the Rollout Agreement under seal with this Court (*see* Dkt. 13). In light of Elemica's false and misleading allegations, it has now become necessary for ecMarket to seek leave to file the addenda under seal with this Court. The Court may rely on these documents in ruling on both the pending Motion to Dismiss and Elemica's Motion for Leave to Amend.[2] Indeed, when the e-mails are considered in the proper context, it is clear that each of the statements contained in those e-mails are accurate, and not derogatory in nature. While recognizing that there is no non-compete agreement between Elemica and ecMarket, Elemica nevertheless seeks to chill open and fair competition through this litigation.

Consistent with the statements in the two e-mails, Elemica's "Quick Link" service does "require" ecMarket's Conexiom solution. Indeed, the stated "Purpose" of the parties' Rollout Agreement states as follows: "Print-to-XML [n/k/a Quick Link] *requires* ecMarket's ERPLink solution [n/k/a Conexiom] and technology to enable the Customers to receive orders from their customers ("Spokecos") electronically, via ERPLink and Elemica." *See* Rollout Agreement dated November 23, 2009 at 1 (emphasis added). Indeed, "[a]s a result of the [Rollout] Agreement, Elemica [was] able to *resell* [Conexiom] in its Print-to-XML offering to its Customers." *Id.* (emphasis added). Allegations to the contrary in the proposed Amended Complaint are simply false.

Second, in Addendum No. 4 (dated February 20, 2014) to the Rollout Agreement, the parties expressly agreed that:

- "**CONEXIOM**" means the ecmarket brand name for the Services that ecmarket provides to Elemica for resale to Elemica's customers . . . CONEXIOM and ERPLink are to be considered as meaning one and the same thing."
- "**QuickLink Print**" and "**QuickLink Email**" means the current Elemica brand names for the Elemica service offering which is also defined as Print-to-XML in the Agreement. For the purposes of the Agreement, QuickLink Print, QuickLink Email, and Print-to-XML are to be considered as meaning one and the same thing."

---

[2] *See Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *2 (D. Del. May 28, 2021) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment") (quoting *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3rd Cir. 2002)).

- "Publicity" – "*ecmarket may at any time publish Elemica as a partner who uses CONEXIOM as an integral part of QuickLink Print and [QuickLink] Email*."

*See* Addendum No. 4 at pp. 1, 3 (emphasis added). Accordingly, ecMarket had Elemica's contractual blessing to inform Olin and DuPont that they are currently using the Conexiom solution through Elemica. The term "white label," as used in the Olin Email, is a common, well known term in the business industry. It is disingenuous for Elemica to claim some type of alleged harm when it previously *agreed* that ecMarket could publish that Elemica uses the Conexiom solution as an "integral part" of QuickLink. *Id.*

Third, as Elemica itself concedes, the parties' current contractual relationship expires on March 1, 2022. *See* Dkt. 1 ¶ 24; Dkt. 18-1 ¶ 25. As of that date, it cannot be disputed that current Elemica customers will no longer be able to use the Conexiom solution through Elemica. It necessarily follows that the customers would need to contract directly with ecMarket to continue to obtain the benefits of the Conexiom solution.

### B. Delaware Law Requires a Facially Derogatory Statement as an Element of Injurious Falsehood.

As set forth in *In re Nat'l Collegiate Student Loan Trusts Litig.*, Delaware generally follows the Restatement (Second) of Torts § 623A when analyzing injurious falsehood claims. A fair reading of Vice Chancellor Slights's decision demonstrates that Elemica must, at minimum, allege that:

- ecMarket published a *false* statement about Elemica, Elemica's property or Elemica's business that was harmful to Elemica's pecuniary interests, *i.e.*, that there was an injury to Elemica's "economic advantage" arising from the "false derogatory statements;"
- ecMarket intended for the publication of the statement to result in harm to Elemica's interests or recognized (or should have recognized) that the *false* statement was likely to result in such harm;
- ecMarket "[knew] enough of the circumstances" such that the publisher of the statement should have recognized "the likelihood that some person will act in reliance upon his statement, or that it will otherwise cause harm to the pecuniary interest of the other *because of the reliance*;"
- the allegedly *false* statement "played a material and substantial part in *influencing the conduct of others*, and that in consequence [Elemica has] suffered special damage;
- the recipient of the allegedly *false* statement "believed the statement to be true, acted (or refrained from acting) in a way that proximately harmed Elemica; and
- ecMarket knew that the statement was false or acted in reckless disregard of its truth or falsity.

3

*See In re National Collegiate Student Lan Trusts Litigation*, 2020 WL 3960334, at *4-6 (Del. Ch. July 13, 2020) (emphasis in *italics* in original; emphasis in **bold** added). Indeed, Vice Chancellor Slights found that there "must be a direct, foreseeable connection between the false statement, a third person's reliance and harm to [Elemica's] interests." *Id.* at *7.

Vice Chancellor Slights admittedly did not answer the question as to whether a facially ***derogatory*** statement is an element of a claim for injurious falsehood, but still granted the defendant's motion to dismiss because the plaintiffs were unable to allege many of the other elements necessary to state a claim for such a tort. *Id.*

While not determining whether Delaware law requires a facially derogatory statement, Vice Chancellor Slights noted that the tort of injurious falsehood "has its roots in claims such as 'slander of title,' 'product disparagement,' and 'trade libel,' which were predicated on 'the knowing publication of false material that is derogatory to the plaintiff's business. The legal encyclopedias explain that an injurious falsehood claim must rest on a statement that is *derogatory* to plaintiff's title, to his or her property or its quality, or to the plaintiff's business or personal affairs.'" *Id.* at *4 (emphasis in original).

Accordingly, it is constructive to consider Delaware cases concerning trade libel and cases from other states concerning injurious falsehood. A review of such decisions weighs heavily in favor of finding that Delaware law requires the false statement to be facially derogatory. In *CapStack Nashville 3 LLC v. MACC Venture Partners*, the Delaware Superior Court stated that the concept of trade libel was expanded to "encompass any injury to economic advantage arising from false and derogatory statements." 2018 WL 3949274, at *5 (Del. Super. Aug. 16, 2018). The *CapStack* court goes on to say that the restatement has adopted this expanded view. *Id.* With regard to other jurisdictions, the Delaware District Court (interpreting New York law) has held that injurious falsehood is a tort requiring "the knowing publication of false and derogatory facts about the plaintiff's business." *Aoki v. Benihana, Inc.*, 839 F.Supp.2d 759, 770-71 (D. Del. 2012). Moreover, several cases from the New Jersey District Court when citing the Second Restatement have also held that injurious falsehood exists if a party publishes material derogatory to another's business. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 919 F. Supp. 756, 762 (D. N.J. 1996) (and the other New Jersey cases cited therein). Still further, courts in several other states have similarly held that the allegedly false statement must also be facially derogatory to state a claim for injurious falsehood.[3]

---

[3] *See*, e.g., *Nichols v. Great American Ins. Companies*, 169 Cal. App. 3d 766, 773 (1985) (applying California law stating "[i]njurious falsehood . . . may consist of the publication of matter *derogatory* to the plaintiff's title to his property, or its quality, or to his business in general . . . ."); *In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (applying the Law of Torts and the Restatement (Second) of Torts stating "[b]usiness disparagement or injurious falsehood applies to *derogatory* publications about the plaintiff's economic or commercial interests."); *Banco Popular North American v. Lieberman*, 75 A.D.3d 460, 462 (2010) (applying New York law stating "[t]he tort of trade libel or injurious falsehood requires the knowing publication of false and *derogatory facts* about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment."); *Western Technologies v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 4 (1986) (applying the Law of Torts and the Restatement (Second) of Torts stating "[i]njurious falsehood consists of the publication of matter *derogatory* to the plaintiff's business in general of a kind calculated to prevent others from dealing with him or otherwise to interfere with his relations with others to his disadvantage."); *Beane v. McMullen*, 265 Md. 585, 607 (1972) (applying the Law of Torts and the Restatement (Second) of Torts stating "[i]njurious falsehood, or disparagement, may consist of the publication

The foregoing case law in Delaware trade libel cases and claims for injurious falsehood brought in several other states, weighs heavily in favor of finding that Delaware should and does require a plaintiff to allege a facially derogatory statement as one of the required elements of an injurious falsehood claim.

### C. Elemica Fails to State a Claim for Injurious Falsehood.

Elemica's claim for injurious falsehood not only fails to allege a facially derogatory statement, but it also fails to assert any of the other required elements of a claim for injurious falsehood.

Neither the Olin Email nor the DuPont Email state anything that is derogatory or could even be construed as derogatory about Elemica or its "Quick Link" service. Neither email suggests that Elemica or its QuickLink service is somehow flawed, problematic, overpriced or less than adequate. Indeed, there is not a negative statement about Elemica in either email. As such, the customers receiving those two e-mails could not reasonably believe that ecMarket was disparaging Elemica in any manner. Rather, ecMarket was simply seeking to start a direct relationship with the prospective customer, as the customer will no longer have access to the Conexiom solution through Elemica as of March 1, 2022. As Elemica concedes, ecMarket is free to compete directly with Elemica. Such fair competition would effectively be impeded **by Elemica** if ecMarket could not reach out to prospective customers and advise them that they will soon not have access to the Conexiom solution, but that it is possible to engage in a direct relationship with ecMarket.

Even assuming *arguendo* that Delaware law does not require that Elemica point to a derogatory statement by ecMarket, Elemica still fails to state a claim for injurious falsehood for multiple reasons. Indeed, <u>none of the statements contained in the two emails is false</u>. To wit:

- Elemica's "Quick Link" service does use and/or require ecMarket's Conexiom solution – **True -** *see* Rollout Agreement at 1;
- The relationship between Elemica and ecMarket is ending in March 2022 – **True** - *see* Dkt. 18-1 ¶ 25; Addendum dated February 5, 2018;
- When the relationship between Elemica and ecMarket concludes, the customer, *i.e.*, Olin or DuPont, will no longer be able to use the Conexiom solution through Elemica – this is necessarily true as of March 1, 2022;

---

of matter *derogatory* to the plaintiff's title to his property, or its quality, or to his business in general . . . ."); *Kensington Dev. Corp. v. Israel*, 142 Wis. 2d 894, 902 (1988) (applying the Law of Torts and the Restatement (Second) of Torts stating "[u]nder a slander of title claim, an individual must show a publication which: (1) results in an *injurious falsehood* or disparagement of property and includes matters *derogatory* to the plaintiff's title or business in general, calculated to prevent others from dealing with the plaintiff, or to interfere with his relations with others to his disadvantage . . . ."); *Kollenberg v. Ramirez*, 127 Mich. App. 345, 350 (1983) (applying the Law of Torts and the Restatement (Second) of Torts stating [i]njurious falsehood cases typically concern *derogatory* or disparaging communications regarding the title to property or its quality."); *Annbar Associates v. American Express Co.*, 565 S.W.2d 701, 706–07 (Mo. Ct. App. 1978) (applying the Law of Torts and the Restatement (Second) of Torts stating "[t]he wrong of "injurious falsehood" is described as consisting of the publication of matter *derogatory* to the plaintiff's business in general, of a kind calculated to prevent others from dealing with him.").

- There is a possibility in the disruption in service to the customer when the Elemica/Conexiom relationship ends in March 2022 – this is also necessarily a possibility as of March 1, 2022; and
- The customer, i.e., Olin and DuPont, can contract directly with ecMarket for the continued use of the Conexiom solution – this is also necessarily true.

Beyond failing to allege a derogatory statement or a false statement, Elemica also fails to allege (i) that the prospective customer *relied* on any of the statements in either of the two emails or that the emails influenced the conduct of either of the two prospective customers or (ii) that Elemica suffered any damages or pecuniary harm as a result of the statements set forth in the two emails. Without alleging either reliance by the prospective customer or any alleged damages proximately caused by the e-mails, Elemica cannot state a claim for injurious falsehood. *See In re Nat'l Collegiate Student Loan Trust Litig.*, 2020 WL 3960334, at *6 ("There must be a direct, foreseeable connection between the false statement, a third person's reliance and harm to the plaintiff's interests."). The proposed Count IV is futile.

### D. Elemica Cannot Allege a Viable DTPA Claim.

Elemica's proposed additional state law claim under the DTPA (Count III) is similarly futile. Elemica asserts that ecMarket violated Sections 2532(a)(5) and (a)(8) of the DTPA. *See* Dkt. 18-1 ¶¶ 51-54. Section 2532(a)(5) requires a representation that "goods or services have sponsorship, approval, characteristics, increases, uses, benefits, or quantities that they do not have, …." 6 *Del. C.* § 2532(a)(5). Section 2532(a)(8) requires a statement that "disparages the goods or services, or business of another by false or misleading representations of fact." 6 *Del. C.* § 2532(a)(8). Neither section of the DTPA applies here.

Elemica's DTPA claim relies exclusively on the same allegedly disparaging, false and misleading statements contained in the two emails. Yet, as demonstrated *supra*, those statements are not disparaging, false or misleading in any fashion. For this reason alone, the DTPA claim fails.

Moreover, Elemica cannot properly allege a DTPA claim without any allegations that the statements actually caused any confusion or that ecMarket did ***not*** genuinely hold the beliefs set forth in those statements. *See Accenture Global Services GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (DTPA claims dismissed because plaintiff failed to allege facts sufficient to make it plausible that defendant did ***not*** sincerely hold the stated belief or opinion; further, the statements were not false representations of fact disparaging the defendant and plaintiff failed to allege sufficient facts to make plausible contention that defendant's statements **likely** caused confusion or misunderstanding in the relevant marketplace) (emphasis in original). Elemica also fails to allege that the statements caused ***any*** actual confusion in the marketplace or that any customer relied upon those statements to Elemica's detriment. Elemica all but concedes that the two emails were "non-events" in the marketplace when it alleges that it "***may*** be irreparably damaged if [the statements] are not halted." *See* Dkt. 18-1 ¶ 56. Elemica's concession that it has not been damaged and that no customers have even relied upon the statements in the two emails dooms its DTPA claim. At bottom, t Count III is also a futile proposed amendment to the Complaint.

6

February 18, 2022

### E. Counts I and II also fail to state a claim.

As of July 21, 2021, the parties had completed briefing on ecMarket's Motion to Dismiss the only two counts in Elemica's original Complaint. The Motion to Dismiss, if granted, would dispose of the case and dismiss Elemica's Defend Trade Secrets Act claim (Count II). The DTSA count is also the lone basis for this Court's original, subject matter jurisdiction over this dispute. Elemica's proposed Amended Complaint does not cure, or attempt to cure, the pleading deficiencies in Counts I and II of the original Complaint. For all of the reasons set forth in ecMarket's Motion to Dismiss, Counts I and II in the proposed Amended Complaint also fail to state a claim.

### F. Conclusion.

A proposed amendment to a complaint is "futile when the updated complaint 'fails to state a claim upon which relief could be granted.'" *White Winston Select Asset Funds, LLC v. Good Times Restaurant, Inc.*, 2021 WL 4948044, at *2 (D. Del. Oct. 25, 2021) (citing *Shane v. Fauver*, 213 F. 3d 113, 115 (3d Cir. 2000)). For the reasons set forth herein and in the pending Motion to Dismiss, each of the four counts in the proposed Amended Complaint fails to state a claim upon which relief could be granted. Accordingly, ecMarket respectfully requests that Your Honor deny Elemica's Motion for Leave to File an Amended Complaint and grant ecMarket's pending Motion to Dismiss.

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi, Esq. (No. 3484)

cc: All counsel of record (via electronic filing)