IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELEMICA INC.

               *Plaintiff,*

      v.                                    No. 1:21-cv-00893-SB

ECMARKET INC., d/b/a Conexiom Inc.

               *Defendant.*

---

John David Simmons, PANITCH SCHWARZE BELISARIO & NADEL LLP, Wilmington, Delaware.

*Counsel for Plaintiff.*

Steven L. Caponi, Megan E. O'Connor, K&L GATES LLP, Wilmington, Delaware; John Ambrogi, Richard Saldinger, LATIMER LEVAY FYOCK LLC, Chicago, Illinois.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

March 29, 2022

BIBAS, *Circuit Judge*, sitting by designation.

As parties uncover new information, they develop a better sense of the issues. And if they spot potential new claims, they may amend their pleadings. That is what happened here. One vendor sued another and later discovered incriminating emails. So it moved to amend its complaint, tacking on new claims. So it moved to amend. Because some of its claims are plausible and amendment will not prejudice ecMarket, Elemica may amend.

## I. BACKGROUND

Elemica automates supply-chain links to suppliers, shippers, and customers. Compl., D.I. 1 ¶ 7. Its automation technology uses ecMarket's services to format data. *Id.* ¶¶ 14–15. To use those services, Elemica had to give ecMarket a lot of information about its customers and their businesses. *Id.* ¶¶ 15, 25. Seeking to protect that data, Elemica convinced ecMarket to sign a confidentiality agreement limiting its use to their "[b]usiness [r]elationship." D.I. 1-1 ¶ 2(iii); Compl. ¶¶ 8–25.

That relationship worked well for a while. *Id.* ¶¶ 17–24. Then, Elemica learned that ecMarket was trying to use that data to poach some of its clients. *Id.* ¶¶ 25–27. After that, the relationship collapsed. D.I. 19-1. Elemica developed its own data-formatting service to replace ecMarket's. Proposed Am. Compl., D.I. 18-1 ¶ 35. And it sued ecMarket for breaching their contract and violating trade-secrets laws. Compl. ¶¶ 28–38.

At once, ecMarket moved to dismiss. D.I. 7. But before I could rule on that motion, Elemica asked to amend its complaint. D.I. 18. Apparently, it has gotten two emails from ecMarket to Elemica's customers inviting them to "start [a] relationship directly

2

with [ecMarket]." D.I. 19-1; *see also* D.I. 19-2. It says these emails "bolster[]" its con-tract and trade-secrets claims. D.I. 19, at 3. Plus, they support two new claims for deceptive trade practices and injurious falsehood. *Id.,* at 3–4.

I agree in part. Elemica's proposed amendments do not support claims for breach of contract or injurious falsehood. But its trade-secrets and deceptive-trade-practices claims are plausible. So I will let Elemica update its complaint.

## II. ELEMICA MAY AMEND ITS COMPLAINT

I should let parties amend "freely … when justice so requires." Fed. R. Civ. P. 15(a). But my discretion is bounded: I should not allow amendment if it is unduly delayed, offered in bad faith, prejudicial to the defendant, or futile. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230–31 (3d Cir. 2011). None of those negative factors is present here.

Elemica wasted no time in asking to amend after discovering ecMarket's emails: it filed its motion just a week after the emails were sent. D.I. 18, 19-1, 19-2. At that point, ecMarket had not yet filed an answer. Nor had the parties agreed on a briefing schedule. D.I. 19, at 3. So Elemica did not unduly delay amending. *See White Winston Select Asset Funds, LLC v. Good Times Rests., Inc.*, 2021 WL 4948044, at *2 (D. Del. Oct. 25, 2021).

Nor would amendment prejudice ecMarket. At most, ecMarket suggests that I could save everyone time by ruling on its motion to dismiss first. D.I. 20, at 8–9; D.I. 28, at 7. On the contrary, granting leave to amend is more efficient. Suppose I dis-missed Elemica's original complaint first. I could then grant leave to amend, and ecMarket could again move to dismiss. Fed. R. Civ. P. 41(b), 12(b)(6). Thus, I would

need to consider twice whether Elemica stated a claim. *White Winston*, 2021 WL 4948044, at \*2 (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Deciding this motion saves both the time it would take Elemica to refile and the time needed to resolve some issues potentially raised by a renewed motion to dismiss.

And some of Elemica's claims *could* survive a motion to dismiss:

*1. Trade secrets.* Elemica plausibly claims that ecMarket abused its "trade secret[s]." *Oakwood Laby's LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (explaining 18 U.S.C. §1839). It says ecMarket used confidential information about its "customers' "needs and requirements, data, software, pricing, and … business systems" to draft pitches stealing Elemica's business. Proposed Am. Compl. ¶¶26, 29–36; D.I. 19-1, 19-2; *see also Revzip, LLC v. McDonnell*, 2020 WL 1929523, at \*3, 8 (W.D. Pa. Apr. 21, 2020) (customer information can be a trade secret).

And ecMarket knew that it could not use Elemica's customer information that way. 18 U.S.C. §1839(5)(B)(ii)(II). It had signed a confidentiality agreement promising to use customer information only in its partnership with Elemica. Proposed Am. Compl. ¶¶8–26; D.I. 1-1 ¶2(iii); *see Oakwood*, 999 F.3d at 912. So Elemica plausibly accuses ecMarket of misusing its trade secrets.

*2. Deceptive trade practices.* Elemica also plausibly alleges that ecMarket engaged in deceptive trade practices. Proposed Am. Compl. ¶¶48–58. Delaware law classifies as deceptive statements that a defendant's "services have … characteristics … that they do not have" or those that falsely "[d]isparage[] the … services … of another." Del. Code Ann. tit. 6, §§2533, 2532(a)(5), (8), (12).

4

Elemica says ecMarket misrepresented Elemica's services and falsely portrayed ecMarket's own. In its emails, ecMarket suggested its services were the exact same as Elemica's. D.I. 19-1; Proposed Am. Compl. ¶¶ 31, 35. In reality, ecMarket's data-formatting services make up only "a small portion of the overall service provided by Elemica[]." *Id.* ¶ 31.

Plus, ecMarket implied that Elemica's customers would suffer "disruption[s] in service" when its partnership with ecMarket ended. D.I. 19-1. To the contrary, Elemica's services would remain fully "operational" because Elemica is developing its own replacement for ecMarket's formatting service. Proposed Am. Compl. ¶ 35. That is enough to plausibly state a deceptive-trade claim. Del. Code Ann. tit. 6, § 2532(b).

Resisting this conclusion, ecMarket argues that its business agreements with Elemica echo the claims in its emails. D.I. 28, at 2–3. Those agreements described ecMarket's services as essential. Since they did, argues ecMarket, its comments could not be disparaging. *Id.*

But I may look at those agreements only if they are "integral to" Elemica's claims. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (emphasis omitted). These agreements are not. Though they leave in place the confidentiality agreement underlying some of Elemica's claims, they do not appear to change it at all. Proposed Am. Compl. ¶¶ 17, 25. Plus, the confidentiality agreement's obligations might continue even after the parties' relationship ends: ecMarket may not use customer information for five years after receiving it. D.I. 1-1 ¶¶ 3–4. Put differently, Elemica's

claims would look the same even if those agreements did not exist. So I will not look at them yet, and ecMarket can raise them in its defense at a later stage.

*3. Injurious falsehood.* But Elemica does not plausibly state an injurious-falsehood claim. Proposed Am. Compl. ¶¶ 59–64. To do so, it needed to connect a "false statement" by ecMarket to "a third person's reliance *and* harm to [Elemica's] interests." *In re Nat'l Collegiate Student Loan Tr. Litig.*, 2020 WL 3960334, at *6 (Del. Ch. July 13, 2020) (emphasis added); *accord* Restatement (Second) of Torts §§ 623A cmt. b, 632 cmt. b (Am. L. Inst. 1977).

Yet Elemica falters on harm. It hints that ecMarket's solicitation emails might lead to lost business. Proposed Am. Compl. ¶ 41. But Elemica does not say that it actually lost business. *See* Restatement (Second) of Torts § 632 cmt. b. (limiting liability to statements that do, in fact, divert business). So it does not plead a plausible injurious falsehood claim.

*4. Breach of contract.* Elemica's breach-of-contract claim fails for the same reason. To show a breach of a confidentiality agreement, it must point to a "compensable injury." *Kronenberg v. Katz*, 872 A.2d 568, 606 (Del. Ch. 2004). But it does not. It has not identified lost business. And though it hints that it *may* have to take "corrective efforts" to mitigate damage from ecMarket's improper use, it does not explain whether it has done so. Proposed Am. Compl. ¶ 41. So that claim is not plausible either.

* * * * *

Because two of Elemica's claims are plausible, amendment is not futile. Plus, that amendment is timely and will not prejudice ecMarket. So I grant Elemica's motion in part and deny ecMarket's earlier motion to dismiss as moot.