UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELEMICA, INC.<br><br>                   *Plaintiff,*<br><br>          v.<br><br>ECMARKET INC. *d/b/a* CONEXIOM INC.<br><br>                  *Defendants.* | Civil Action No. 21-893-SB<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff Elemica, Inc. ("Elemica") by and through its undersigned counsel, files this Amended Complaint against Defendant ecMarket Inc. ("ecMarket") *d/b/a* Conexiom Inc., and alleges as follows:

## NATURE OF THE ACTION

1. This is an action in law and equity for violation of the Defend Trade Secrets Act and breach of the Deceptive Trade Practices Act.

## THE PARTIES

2. Plaintiff Elemica is a Delaware corporation with an address at 550 East Swedesford Road, Suite 310, Wayne, Pennsylvania 19087.

3. Defendant ecMarket is a Delaware corporation and, upon information and belief, maintains a principal place of business at 1140 Pender Street West, Suite 1400, Vancouver, British Columbia, V6E 4G1, Canada.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1836 and 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over ecMarket because it is incorporated in Delaware.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because ecMarket is incorporated in this judicial district and because of the Governing Law provisions the Parties agreed to in the Mutual Confidentiality Agreement described in detail *infra*.

## FACTS

7. Elemica is a leading provider of supply chain management products and services.

8. On September 28, 2007, Elemica and ecMarket entered into a Mutual Confidentiality Agreement (the "Mutual Confidentiality Agreement"). A true and correct copy of the Mutual Confidentiality Agreement is attached hereto as Exhibit A.

9. The Mutual Confidentiality Agreement allowed Elemica and ecMarket to exchange Confidential Information with assurances that the Receiving Party could not disclose the Confidential Information or use the Confidential Information for any purposes other than those specified by Paragraph 2(iii) of the Mutual Confidentiality Agreement.

10. Paragraph 1(a) of the Mutual Confidentiality Agreement defined Confidential Information broadly, including business affairs, business and marketing plans, data, customers, customer lists, customer needs and requirements documentation, trade secrets, prices, technology, accounting, and business systems.

11. Paragraph 2 of the Mutual Confidentiality Agreement relates to obligations of the Receiving Party of Confidential Information and states the Receiving Party "shall: … (ii) Refrain from disclosing any Confidential Information to any person, other than to such of its employees, agents, consultants and representatives to whom disclosure is necessary in connection with the Business Relationship or the Services and who shall be informed of said terms and agree in

writing to be bound by obligations at least as restrictive as those set forth herein. (iii) Use the Disclosing Party's Confidential Information solely in connection with (i) entering into the Business Relationship and (ii) the use and operation (including testing) of the Elemica Network and the Services and in connection with transactions conducted thereon."

12. Paragraph 4 of the Mutual Confidentiality Agreement states "[t]he non-disclosure and non-use obligations of this Agreement will remain in full force with respect to each item of Confidential Information for a period of five (5) years after Recipient's receipt of that item."

13. Paragraph 8(b) of the Mutual Confidentiality Agreement specifies that the state and federal courts in Delaware have exclusive jurisdiction over any controversy arising under the Mutual Confidentiality Agreement.

14. The Mutual Confidentiality Agreement has not expired or otherwise been cancelled or invalidated.

15. In November 2009, Elemica and ecMarket entered into a Rollout Agreement ("the Rollout Agreement") under which ecMarket would provide certain services to Elemica and its customers.

16. Under the Rollout Agreement, Elemica provides Confidential Information regarding its customers and their business to ecMarket. ecMarket provides data formatting services for Elemica and its customers.

17. The Rollout Agreement explicitly incorporates and maintains the Mutual Confidentiality Agreement.

18. On December 18, 2009, Elemica and ecMarket executed an Addendum to the Rollout Agreement.

19. On November 4, 2011, Elemica and ecMarket executed a Second Addendum to the Rollout Agreement.

20. On December 7, 2011, Elemica and ecMarket executed a Third Addendum to the Rollout Agreement.

21. On February 20, 2014, Elemica and ecMarket executed a Fourth Addendum to the Rollout Agreement.

22. On August 1, 2016, Elemica and ecMarket executed a Fifth Addendum to the Rollout Agreement.

23. On February 9, 2018, Elemica and ecMarket executed a Sixth Addendum to the Rollout Agreement.

24. On July 19, 2019, Elemica and ecMarket executed a Seventh Addendum to the Rollout Agreement.

25. Through the Addenda, the Rollout Agreement is valid until March 1, 2022, and none of the Addenda override the Mutual Confidentiality Agreement.

26. Under the Mutual Confidentiality Agreement, the Rollout Agreement, and the Addenda, ecMarket received and continues to receive Confidential Information from Elemica and its customers, including BASF, Dupont, Lanxess, and others. This Confidential Information included not only the customers' names, but also the customers' needs and requirements, data, software, pricing, and their business systems. ecMarket processed well over two hundred thousand individual messages over the past twelve months and each message includes Confidential Information from Elemica and its customers. Processing of many of the messages involve proprietary mapping protocols that are designed for individual customers and documents.

27. Upon information and belief, ecMarket has used this Confidential Information to solicit at least BASF, Dupont and Lanxess in connection with efforts to divert business from Elemica to ecMarket.

28. Upon information and belief, ecMarket's misuse of Elemica's Confidential Information has at all relevant times been willful and malicious.

29. On November 3, 2021, ecMarket emailed Olin Corp. ("Olin Email"), a customer of Elemica, to solicit Olin Corp.'s ("Olin") business. The Olin Email is attached hereto as Exhibit B.

30. In the Olin Email, ecMarket claimed that "Olin is leveraging a service through Elemica called 'Quick Link', that service is actually white labeled Conexiom." The November 3 Email also states, "[b]eginning 2022 we are ending the relationship with Elemica that supports that Quick Link solution." The email further indicated it was sent "so we can discuss how to start the relationship directly with Conexiom (instead of through Elemica) and make sure there isn't a disruption in service. It is my understanding that we have around 10 of your customers running through that order automation solution."

31. The statements in the preceding paragraph are false and misleading. "QuickLink" is not a white-labeled Conexiom product. Rather, Conexiom is an Elemica vendor that provides a portion of the overall service provided by Elemica's QuickLink product. The Conexiom service is a small portion of the overall service provided by Elemica's QuickLink product and is provided for a small portion of Elemica's customers who utilize the QuickLink product.

32. The statements in the Olin Email were also made in connection with ecMarket's attempts to solicit Elemica's customers, discloses confidential information, including the number of Olin's customers that utilize the Conexiom service in Elemica's QuickLink service, in

violation of the Mutual Confidentiality Agreement and falsely speculates that there will be "a disruption in service" if Olin does not "start the relationship directly with Conexiom." Elemica's QuickLink service will not be disrupted without the Conexiom service at the beginning of 2022 as the Conexiom service may be and is being replaced by Elemica's own solution.

33. On November 3, 2021, ecMarket emailed DuPont de Nemours, Inc. ("DuPont Email"), a customer of Elemica to solicit DuPont de Nemours, Inc.'s ("DuPont") business. The DuPont email is attached hereto as Exhibit C.

34. In the DuPont Email, ecMarket claimed "DuPont is using Conexiom through Elemica to automate sales orders. I was recently informed that our partnership with Elemica is ending as of March 2022 and this service will no longer be available for your organization."

35. The statements in the preceding paragraphs are misleading. Conexiom is a portion of the overall service provided by Elemica's QuickLink product that automates sales orders for Elemica's customer DuPont and other customers. Elemica's QuickLink service will be available and operational for all of Elemica's customers without Conexiom's service as the Conexiom service will be and is being replaced by Elemica's own solution.

36. The statements in the DuPont Email were also made in connection with ecMarket's attempts to solicit Elemica's customers, discloses confidential information, including speculation regarding services provided by Conexiom to Elemica and whether the services will be available to DuPont, in violation of the Mutual Confidentiality Agreement. Elemica's QuickLink service and service to DuPont will not be disrupted without Conexiom as of March 2022 as the Conexiom service may be and is being replaced by Elemica's own solution.

## COUNT I
### Violation of the Defend Trade Secrets Act
### 18 U.S.C. § 1836

37. Elemica hereby repeats and incorporates the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38. Elemica's Confidential Information, as described herein, are the trade secrets of Elemica and its customers.

39. ecMarket obtained these trade secrets under the Mutual Confidentiality Agreement, as described above.

40. ecMarket improperly used these trade secrets for purposes other than those set forth in the Mutual Confidentiality Agreement to solicit Elemica's customers.

41. ecMarket's improper use of the trade secrets occurred in interstate commerce.

42. Elemica has been damaged in an amount to be determined at trial through ecMarket's improper use of its and its customers' trade secrets. Elemica's damages include at least any business gained by ecMarket through use of the trade secrets and any damages suffered by Elemica through corrective efforts undertaken to correct for ecMarket's improper use of the trade secrets.

## COUNT II
### Violation of the Uniform Deceptive Trade Practices Act
### 6 Del. C. § 2531 *et seq.*

43. Elemica hereby repeats and incorporates the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

44. ecMarket's statements, including at least the Olin Email and the DuPont Email, have been made in the course of its business.

45. ecMarket's statements, including at least the Olin Email representations that its products have sponsorship and characteristics that they do not have, as ecMarket's service is not a like-for-like replacement or white labeled service of Elemica's QuickLink product, and the representations in the Olin and DuPont Emails that Elemica's customers will face service disruptions or termination, as Elemica's services will continue with our without Conexiom, are false and/or misleading.

46. ecMarket has therefore violated 6 Del. C. § 2532(a)(5).

47. ecMarket's statements, including at least the Olin Email, disparage the goods, services, and business of Elemica by falsely or misleadingly representing that Elemica's services are merely white-labeled versions of ecMarket's products, when in fact Elemica's QuickLink product includes significant intellectual property and knowhow developed by Elemica itself.

48. ecMarket's statements in the Olin and DuPont Emails further disparage the goods, services, and business of Elemica by falsely or misleadingly representing that Elemica's QuickLink service will face "disruption in service" if Olin does not "start the relationship directly with Conexiom" (See Exhibit B) or that "service will no longer be available to your organization," when in fact Elemica's QuickLink product will continue to operate with or without Conexiom now and in the future.

49. ecMarket has therefore violated 6. Del. C. § 2532(a)(8).

50. Upon information and belief, ecMarket's statements were a willful attempt to improperly divert Elemica's customers to ecMarket.

51. Elemica may be irreparably damaged if ecMarket's false and misleading statements are not halted. Elemica therefore seeks an injunction prohibiting ecMarket from claiming that any of its services are a complete, like-for-like replacement to Elemica's services

or products and prohibiting ecMarket from claiming that Elemica's services or products are merely white-labeled products or services of ecMarket.  Elemica further seeks an injunction prohibiting ecMarket from claiming that Elemica's QuickLink product or any of Elemica's services will be disrupted or interrupted in any way without Conexiom's service.

52.     Due to ecMarket's willful violation of this Act, Elemica seeks its attorneys' fees incurred in this action.

53.     Pursuant to 6 Del. C. § 2533(c), Elemica will seek trebling of any monetary damages otherwise awarded in this Action.

## DEMAND FOR JURY TRIAL

Elemica respectfully demands a trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ELEMICA, INC. respectfully prays for the following relief against Defendant ecMarket, as follows:

(a) Any damages suffered by Elemica for ecMarket's misuse of trade secrets;

(b) Any profits earned by ecMarket through use of Elemica's trade secrets;

(c) Exemplary damages in an amount double that of any damages awarded for ecMarket's misuse of Elemica's trade secrets;

(d) Trebling, pursuant to 6 Del. C. § 2533(c), of any damages otherwise awarded in this Action;

(e) An order permanently enjoining and restraining ecMarket and those in active concert and participation with ecMarket from:

   a. Soliciting Elemica's customers using any information obtained from Elemica under the Mutual Confidentiality Agreement, and

    b. Publishing any false or misleading statements about Elemica and Elemica's products;

(f) Elemica's costs in connection with this action;

(g) Elemica's attorneys' fees in connection with this action due to ecMarket's willful and malicious misuse of Elemica's trade secrets and willfully deceptive trade practices; and

(h) Any other relief that the Court finds warranted and just.

Dated: April 7, 2022

PANITCH SCHWARZE BELISARIO & NADEL LLP

*/s/ John D. Simmons*
John D. Simmons (#5996)
Wells Fargo Tower
2200 Concord Pike, Suite 201
Wilmington, De 19803
Telephone: (302) 394-6001
jsimmons@panitchlaw.com

**Counsel for Plaintiff Elemica, Inc**.