**K&L GATES**

November 14, 2023

Steven L. Caponi
Partner
steven.caponi@klgates.com

T +1 302 416 7080
F +1 302 416 7020

<u>Via CM/ECF</u>

The Honorable Stephanos Bibas
United States District Court
District of Delaware
844 N. King Street
Wilmington, DE  19801

**Re:  *Elemica Inc. v. ecMarket Inc.*; C.A. No. 21-893-SB**

Dear Judge Bibas:

      On behalf of Defendant/Counter-Plaintiff, ecMarket, Inc. ("ecMarket"), I write pursuant to this Court's May 24, 2023 Scheduling Order (Dkt. 59) to outline the discovery issue in dispute between ecMarket and Plaintiff/Counter-Defendant Elemica, Inc. ("Elemica") and ecMarket's position regarding this issue.

      During the term of the parties' contractual relationship, ecMarket provided its Conexiom software solution to customers of Elemica who used Elemica's "QuickLink Email" solution. Indeed, in the stated purpose contained in the parties' Rollout Agreement, Elemica acknowledged that "[QuickLink Email] requires ecMarket's [Conexiom solution] and technology to enable [Elemica] Customers to receive orders from their customers electronically via [Conexiom] and Elemica."  There was no non-compete agreement between the parties, and therefore, ecMarket always had the right to sell, or attempt to sell, its Conexiom solution directly to any potential customer including, but not limited to, current or former Elemica customers who were receiving or had received the benefits of Conexiom through QuickLink Email.

      In its Amended Complaint and throughout discovery, Elemica has alleged that the ***names*** of those customers who used or are using Elemica's "QuickLink Email" service is a confidential trade secret.  Elemica claims that ecMarket improperly used this alleged "trade secret" in violation of the Defend Trade Secrets Act (18 U.S.C. § 1836) and in violation of the Uniform Deceptive Trade Practices Act (6 *Del. C.* § 2531, *et seq*.) by soliciting Elemica's customers who used or are using QuickLink Email.  Elemica concedes that ecMarket's "Conexiom" service was a "portion of the overall service provided by Elemica's QuickLink product" (*see* Dkt. 33 ¶¶ 31, 35), and further concedes that there was no non-complete agreement.  Nevertheless, during his deposition, Elemica's CEO (David Muse) testified that even though there was not a non-compete agreement between the parties, ecMarket acted improperly by soliciting Elemica's customers because the fact those customers used QuickLink Email was confidential information that ecMarket only knew because of its contractual relationship with Elemica.  When asked whether Elemica's contracts with its customers prevented either Elemica or its customer from disclosing the fact that the

customer was using QuickLink Email, Mr. Muse testified that each of the contracts would have "specific terms and conditions that … would dictate that disclosure and governance around disclosure."

In response, ecMarket served its Second Set of Requests for Documents to Elemica (the "Second Request"). The Second Request contained a single, additional document request seeking copies of the written agreements, including any confidentiality or non-disclosure agreements, between Elemica and a finite list of thirty-eight (38) customers who used Conexiom's software through Elemica's QuickLink Email solution.[1] In written communications with Elemica's counsel, ecMarket made it clear that Elemica could produce redacted copies of the responsive documents, as ecMarket was only focused on "provisions in those contracts that govern confidentiality (or lack thereof) and/or the right for either [Elemica or its customer] to publicize (or the lack of any such right) the existence of the contractual relationship between the parties and/or the customer's use of the QuickLink Email/QuickLink Print product."

However, despite ecMarket's willingness to allow redactions and the existence of a Protective Order entered by this Court, Elemica objected to the production of any documents in response to the Second Request. Shortly thereafter, Elemica attempted to resolve the parties' dispute regarding its objection to the Second Request by producing redacted copies of its contracts only with DuPont and with Honeywell. Elemica justified its limited production by arguing that it is only seeking damages in connection with ecMarket's alleged efforts to solicit these two customers.

By letter dated October 30, 2023, ecMarket made a final effort to reach a compromise before the filing of this Motion. In its October 30, 2023 letter, ecMarket explained the relevance of the requested information and the reasons why the production of solely the DuPont and Honeywell contracts was not sufficient. As a compromise to compelling Elemica to produce all of the responsive agreements, ecMarket suggested that Elemica could stipulate in writing that: "(i) Elemica's customers are contractually free to disclose and/or publicize the fact that they use Elemica's QuickLink Email solution; and (ii) Elemica is contractually free to disclose and/or publicize the names of its customers who use the QuickLink Email solution." However, and critically, Elemica was unwilling to agree to such a stipulation.

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party … Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). Further, it is well-settled that for Elemica to prevail on its claim under the Defend Trade Secret Act, it will have to demonstrate that it has taken "reasonable measures" to keep the allegedly confidential information "secret." *See Oakwood Labs. LLC v. Thanoo,* 2021 U.S. App. LEXIS 16973, at *24 (3d. Cir. June 8, 2021) (*citing* 18 U.S.C.S. §§ 1836(b)(1), 1836(b)(3), 1839(3) (internal citations omitted)).

---

[1] ecMarket limited its request to the 38 customers who Elemica identified in discovery as having received the "Muse Email." The Muse Email is also the subject of ecMarket's counterclaim for defamation. *See* Dkt. 39, at 23-25 ¶¶ 27-34.

Here, Elemica has taken the position that the names of its customers using QuickLink Email was a confidential "trade secret" entitled to protection pursuant to the Defend Trade Secrets Act and otherwise. As such, what reasonable measures, if any, Elemica took to protect such information from disclosure is highly relevant to this dispute. If the evidence continues to demonstrate, as it has thus far, that Elemica (i) did not take any steps to keep the identity of its QuickLink Email customers confidential, (ii) actually publicized that information and (iii) allowed its customers to do the same, Elemica cannot sustain a claim that the identity of such customers was a protectable "trade secret."

Through its contractual provisions with its QuickLink Email customers, Elemica may have included terms prohibiting the public disclosure (by either Elemica or the customer) of that customer as a QuickLink Email customer. Alternatively, the contract may expressly allow either Elemica and/or the customer to publicize that relationship for marketing purposes. In any and all events, the confidentiality/non-disclosures/publicity provisions in those contracts are relevant to this dispute and the determination as to whether Elemica took "reasonable measures" to maintain the confidentiality of the identity of its QuickLink customers.

Elemica's production of solely its contracts with DuPont and Honeywell is insufficient. Through its various claims, Elemica is seeking damages far beyond the damages it alleges in its Supplemental Complaint arising from and/or relating to alleged efforts made by ecMarket to solicit business from DuPont and/or Honeywell. *See* Dkt. 62-1; *see also* Dkt. 63 (Declaration of Matthew McAluney (Chief Commercial Officer of Elemica)). Indeed, Elemica's prayer for relief in its Amended Complaint seeks damages beyond what is set forth in its Supplemental Complaint. *See* Dkt. 33. Moreover, reasonable measures, if any, taken by Elemica with all of its QuickLink Email customers directly impacts Elemica's claim that ecMarket violated the Defend Trade Secrets Act, which is not limited to ecMarket's alleged efforts to solicit DuPont and Honeywell.

Still further, when provided with the opportunity to enter into a straightforward stipulation that would moot the need for the production of any additional documents in response to the Second Request, Elemica refused. As such, the provisions governing confidentiality/publication/non-disclosure contains in Elemica's contracts with a finite list of QuickLink Email customers who also received the benefits of Conexiom (and received the Muse Email), more than satisfies the relevance standard contained in Rule 26 of the Federal Rules of Civil Procedure. However, to date, Elemica has refused to produce documents and information legally relevant to ecMarket's efforts to refute Elemica's position that the names of its customers were confidential, trade secrets.

As such, ecMarket's seeks relief from this Court. Thank you in advance for your attention to these matters.

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi, Esq. (No. 3484)

cc: All counsel of record (via electronic filing)