**K&L GATES**

Steven L. Caponi
Partner
steven.caponi@klgates.com

T +1 302 416 7080
F +1 302 416 7020

February 23, 2024

**Via ECF**
The Honorable Stephanos Bibas
United States District Court
For the District of Delaware

**Re:** *Elemica Inc. v. ecMarket Inc.*; C.A. No. 21-893-SB

Dear Judge Bibas:

Defendant/Counter-Plaintiff, ecMarket, Inc. ("ecMarket"), pursuant to this Court's Scheduling Order (Dkt. 59), respectfully seeks leave to amend ecMarket's counterclaim to add claims against Elemica, Inc. ("Elemica") for reformation of the July 16, 2019 Addendum to the parties' Rollout Agreement (the "Seventh Addendum") and breach of the implied covenant of good faith and fair dealing.

*Legal Standard for Motions for Leave to Amend*

Under FRC Rule 15(b)(2) the Court should "freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(b)(2). "Leave to amend should be granted absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Edwards v. Bayview Loan Servicing, LLC*, 2017 WL 879283, at *3 (D. Del. Mar. 6, 2017) (internal quotation omitted). An amendment is futile if it fails to state a claim upon which relief can be granted. *Id.* To demonstrate undue prejudice the non-movant "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered ... had the amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989). "If a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 of the Federal Rules of Civil Procedure is also implicated." *ICU Medical, Inc. v. RyMed Techs., Inc.*, 674 F.Supp.2d 574, 577 (D. Del. 2009). Under Rule 16(b) "a schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4)." "To show good cause to modify a scheduling order, the party moving to amend a pleading must demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Glaxosmithkline LLC v. Glenmark Pharmaceuticals Inc.*, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016).

*Rule 16 – Good Cause Exists for the Amendment*

ecMarket recently learned through the depositions of Elemica's own witnesses that: (a) on April 9, 2019, the parties agreed to keep certain "Inactive SpokeCos" in the production network in exchange for a discounted rate as to those Inactive SpokeCos (the "April 9 Agreement"); and (b) the parties did *not* revoke or modify the April 9 Agreement at any time prior to execution of the Seventh Addendum. Indeed, there is no evidence of any further negotiations by the parties following the April 9 Agreement. Prior to the recent completion of its depositions of Elemica's witnesses, ecMarket did not know whether Elemica would assert that the parties revoked or modified the April 9 Agreement. Through those depositions, ecMarket learned for the first time that it has good faith

claims for reformation of the Seventh Addendum and for breach of the implied covenant of good faith and fair dealing. Based on that discovery of new information, good cause exists under Rule 16. *See Stewart v. Emmons*, 2014 U.S. Dist. LEXIS 41467, *7 (E.D. Pa. March 27, 2014) ("Discovering new information during the progression of a lawsuit constitutes good cause under Rule 16 if the information could not have been known before discovery.")

Moreover, ecMarket was diligent in conducting discovery. Document production began in August 2023 (*see* Dkt. 80), and Elemica continued to produce documents into the winter of 2023 and early 2024. *See* Dkt. 136-137, 139, 142. Elemica, however, failed to produce any documents demonstrating that the April 9 Agreement changed at a later date. Elemica also failed to produce any documents demonstrating that ecMarket agreed to provide Elemica with a discount on ***any*** 1,300 ***active*** Trading Partners.

ecMarket also took the relevant depositions as soon as reasonably practicable based on the schedules of counsel and the witnesses (most of whom were former Elemica employees) and following the substantial completion of the parties' exchange of written discovery. In connection with its breach of contract claim, ecMarket focused on three Elemica witnesses: Vince Squillacioti, Anthony Palladino and Elemica's in-house counsel, Brad Delizia. The depositions of those witnesses took place as follows: Mr. Squillacioti – October 17, 2023; Mr. Palladino – December 15, 2023; and Mr. Delizia – December 18, 2023. Notably, Mr. Delizia testified not only as a fact witness, but also as Elemica's designated corporate representative pursuant to Rule 30(b)(6) on multiple topics including: (i) the negotiations and execution of the Seventh Addendum; and (ii) the meaning of the term "1,300" in the Seventh Addendum.

Through those depositions, ecMarket learned that Elemica's factual position here is that: (i) on April 1, 2019, Elemica sent ecMarket an excel spreadsheet containing a list of specific "Dormant Maps" or "Inactive Spokecos" that it wanted ecMarket to remove from its production network; (ii) in response to the two "Options" offered by ecMarket, Elemica agreed via an email dated April 9, 2019 to "Option 1," which would keep the specific Dormant Maps in ecMarket's production network, but at a discounted rate; (iii) Elemica has no knowledge of the deal changing after April 9, 2019 and prior to the execution of the Seventh Addendum; and (iv) despite the clear intent of the April 9 Agreement, Elemica took the position following the execution of the Seventh Addendum that it was entitled to a discount without regard to whether the specifically identified Dormant Maps remained in ecMarket's network or were deactivated/removed – a position inconsistent with the April 9 Agreement.

ecMarket has also been diligent in seeking leave to amend. In that regard, ecMarket finished deposing two of Elemica's three key witnesses in mid to late December 2023. Immediately thereafter, in January 2024, the parties agreed to a mediation. Operating under a good faith belief that the mediation could be successful, ecMarket did not immediately seek leave to amend. However, following that unsuccessful mediation, ecMarket has been diligent in promptly submitting this request for leave to amend its Counterclaim. Notably, Elemica moved for leave to amend its affirmative defenses on January 18, 2024. *See* Dkt. 144. ecMarket respectfully consented, and the Court granted Elemica's unopposed motion. *See* Dkt. 149.

**<u>Rule 15 – The Proposed Amendment is Not Futile, and Elemica Will Not be Prejudiced.</u>**
Under Delaware law, the parties may reform a contract where there is evidence of mutual mistake or unilateral mistake. *First Am. Title Ins. Co. v. MacLaren, L.L.C.*, 2012 WL 769601, at *6

(D. Del. Mar. 9, 2012).  To support reformation based on mutual mistake, it must be shown that the contract does not represent the parties' intent due to a mistake, "common to both parties," when the contract was reduced to writing. *Id.*  The second is the doctrine of unilateral mistake. *See Cerberus Int'l v. Apollo Mgmt., L.P.*, 794 A. 2d 1141, 1151-52 citing *Collins v. Burke*, 418 A.2d 999, 1002 (Del. 1980). The party asserting this doctrine must show that it was mistaken and that the other party knew of the mistake but remained silent. *Id.*  Regardless of which doctrine is used, the plaintiff must show by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement.  *Id.*

Here, ecMarket has a good faith basis to allege that the parties came to a specific prior understanding and agreement through the emails exchanged between Elemica and ecMarket between April 1, 2019 and April 9, 2019.  Elemica's own witnesses confirmed the same in their depositions, and there is no evidence that the parties' understanding and agreement changed after April 9, 2019.  As such, whether through mutual mistake or unilateral mistake, the Seventh Addendum does not accurately reflect the parties' April 9 Agreement.  Accordingly, ecMarket's claim for reformation would not be futile.

The implied covenant of good faith and fair dealing involves inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated. *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).  "To sufficiently allege a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) a specific obligation implied in the contract, (2) a breach of that obligation, and (3) resulting damages." *OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 WL 4658211, at *4 (D. Del. Sept. 27, 2018). The April 9 Agreement obligated Elemica not to take any steps to deactivate or remove the specific Inactive Spokecos from ecMarket's production environment.  Yet, Elemica took steps to deactivate more than 1,100 of those Inactive Spokecos and still availed itself of the discounted production service fees set forth in the Seventh Addendum.  Elemica knew that such a discount was inconsistent with the April 9 Agreement, but in bad faith, Elemica ignored the April 9 Agreement and claimed that it was entitled to a discount on ***any*** 1,300 Trading Partners.  ecMarket's claim for breach of the implied covenant of good faith and fair dealing is also not futile.

The amended counterclaim also does not unfairly prejudice Elemica, as it stems in large part from the deposition testimony of Elemica's own witnesses, all of whom were represented by Elemica's outside counsel.  Elemica's outside counsel even asked questions of Elemica's own witnesses during those depositions. At bottom, the facts giving rise to ecMarket's amended counterclaim should not surprise Elemica, who clearly knew or should have known how its own witnesses would testify at their depositions.

ecMarket respectfully seeks leave to file its proposed Amended Counterclaim.  Clean and blacklined copies of the proposed Amended Counterclaim are attached as Exhibits 1 and 2.

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi, Esq. (No. 3484)

cc:  All counsel of record (via electronic filing)