IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELEMICA, INC.,<br><br>*Plaintiff/Counter-Defendant,*<br><br>v.<br><br>ECMARKET INC. d/b/a CONEXIOM INC.,<br><br>*Defendant/Counter-Plaintiff.* | Case No. 1:21-cv-893-SB<br><br>REDACTED VERSION |

**PLAINTIFF/COUNTER-DEFENDANT ELEMICA, INC.'S**
**OPENING BRIEF IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT ON BREACH OF CONTRACT AND DEFAMATION**

Date Filed: April 10, 2024

OF COUNSEL:

Stephen E. Murray (admitted *pro hac vice*)
PANITCH SCHWARZE BELISARIO &
NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103
smurray@panitchlaw.com

PANITCH SCHWARZE BELISARIO &
NADEL LLP

John D. Simmons (#5996)
Dennis J. Butler (#5981)
Keith A. Jones (#7011)
Ava E. Lutz (admitted *pro hac vice*)
Wells Fargo Tower
2200 Concord Pike, Suite 201
Wilmington, DE 19803
Telephone: (302) 394-6001
Facsimile: (215) 965-1331
jsimmons@panitchlaw.com
kjones@panitchlaw.com
alutz@panitchlaw.com

***Counsel for Plaintiff/Counter-Defendant***
***Elemica, Inc.***

## **TABLE OF CONTENTS**

I.  SUMMARY OF THE ARGUMENTS ................................................................................... 1

II. Statement of the Nature and Stage of the Proceedings ....................................... 2

III. CONCISE STATEMENT OF FACTS ................................................................................ 2

   A. The Muse Email ............................................................................................... 3

   B. Amendment # 6 and the Deactivation of Trading Partners .................................. 4

IV. ARGUMENT ................................................................................................................ 5

   A. Conexiom's defamation claim fails because it has no evidence of special damages or reputational harm .................................................................................................. 6

   B. Elemica Did Not Breach Any Contractual Obligation Under Amendment # 6 ................. 7

     1. The bargained-for discount applies regardless of whether trading partners are deactivated in the database. ........................................................................................ 8

     2. Assuming *arguendo* Elemica was only entitled to a discount as long as it did not delete certain trading partners, Conexiom waived this requirement. ............................................... 10

     3. Elemica is entitled to an adverse inference because Conexiom spoliated critical evidence during this litigation. ............................................................................ 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*,
    871 A2d 428 (Del. 2005) ...................................................................................................10, 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................................5

*Bull v. United Parcel Serv., Inc.*,
    665 F.3d 68 (3d Cir. 2012) ......................................................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................................................5

*H-M Wexford LLC v. Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003) ...................................................................................................8

*Preston Hollow Capital LLC v. Nuveen LLC*,
    C.A. No. N19C-10-10, 2022 Del. Super. LEXIS 264 (Del. Super. Ct. June 14,
    2022) .....................................................................................................................................6, 7

*Q-Tone Broadcasting, Co. v. Musicradio of Maryland, Inc.*,
    C.A. No. 93C-09-021, 1994 Del. Super. LEXIS 453 (Del. Super. Aug. 22,
    1994) ..........................................................................................................................................7

*Schmid v. Milwaukee Elec. Tool Corp.*,
    13 F.3d 76 (3d Cir. 1994) ........................................................................................................13

*Spence v. Funk*,
    396 A.2d 967 (Del. 1978) ..........................................................................................................6

*Vitalo v. Cabot Corp.*,
    399 F.3d 536 (3d Cir. 2005) ......................................................................................................6

*Wagner v. Sea Esta Motel I*,
    2014 U.S. Dist. LEXIS 118462 (D. Del. Aug. 26, 2014) ........................................................13

**Statutes**

Defend Trade Secrets Act ...............................................................................................................2

Delaware Uniform Deceptive Trade Practices Act .........................................................................2

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................................5

I.  **SUMMARY OF THE ARGUMENTS**

This Brief is submitted by Plaintiff Elemica, Inc. ("Elemica") in support of its Motion for Summary Judgment on the breach of contract (Count I) and defamation *per se* (Count II) counterclaims asserted against Elemica in Defendant ecMarket Inc.'s ("ecMarket" d/b/a "Conexiom") Answer and Counterclaims.  (D.I. 39, ¶¶ 35-48).

<u>First</u>, Conexiom's defamation *per se* counterclaim fails because Conexiom has no proof of special damages and no proof of diminution in reputation.  Under Delaware law if there are no special damages, the claimant must provide evidence of diminution in reputation to proceed with a defamation *per se* claim. Conexiom has no evidence of diminution in reputation.

<u>Second</u>, Elemica did not breach a contractual obligation under the ERP Rollout Agreement ("the Rollout Agreement") and its Amendment # 6.  Conexiom's own witnesses confirmed that the terms of the Agreement are unambiguous and there is no limitation regarding deactivation of specific trading partners therein.  Accordingly, there is no breach by Elemica.

<u>Third</u>, even if, *arguendo,* Elemica somehow breached a contractual obligation by deactivating trading partners, Conexiom cannot recover under this theory because it waived its claim.  Conexiom's own witnesses testified that only Conexiom was able to deactivate and/or remove trading partners from its production environment.  In the end, it was Conexiom, not Elemica, that deactivated any trading partners.

<u>Fourth</u>, if the Court finds a dispute of fact, Elemica should be entitled to an adverse inference that it did not deactivate any of the specific trading partners Conexiom is asserting are tied to the Agreement and Amendment # 6 because Conexiom spoliated key evidence during the litigation. While this litigation was pending, Conexiom deleted the entire trading partner database from its servers, which is the subject of Conexiom's breach of counterclaim, thereby failing to preserve critical evidence.

1

For these reasons, as more fully explained below, Elemica respectfully requests the Court enter summary judgement in its favor regarding Conexiom's counterclaims.

**II.     Statement of the Nature and Stage of the Proceedings**

Discovery is closed.  (D.I. 59).  The deadline to file dispositive motions is April 10, 2024. (D.I. 59, 149, and 173).  Elemica has filed a Motion for Summary Judgement on Conexiom's counterclaims, and this brief is in support of that Motion.  The Joint Proposed Pretrial Order is due June 9, 2024.  (D.I. 59 and 149).  Trial is scheduled for the week of July 15, 2024. (D.I. 59).

**III.    CONCISE STATEMENT OF FACTS**

Plaintiff Elemica is a leading provider of supply chain management products and services.

Under the MCA Conexiom could not disclose confidential information or use confidential information for any purpose other than those specified by the MCA ¶2(iii).  (Ex. C).  Elemica sued Conexiom on June 22, 2021 for violation of the Defend Trade Secrets Act.  (D.I. 1).  On April 7, 2022, Elemica amended its Complaint to allege a violation of the Delaware Uniform Deceptive Trade Practices Act (D.I. 33) and supplemented its Complaint on June 14, 2023, to add a claim for breach of the MCA.  (D.I. 62).

These allegations all relate to Conexiom's improper handling of the confidential information under the MCA.

### A. The Muse Email

In November 2021, Conexiom employees sent a series of emails to Elemica's customers falsely informing them that Elemica's automation of sales orders for those customers, which Conexiom only partially supported,                                                    . (Ex. E). Sixteen emails to sixteen different employees at six different companies, all customers of Elemica, were sent.  A LinkedIn message was also sent to one of these sixteen employees.  Specifically, six emails to six different DuPont employees were sent, five of which were sent on the same day.  (Ex. E).

In response to these emails, Elemica's then-CEO, David Muse, sent an email ("the Muse email") to the Elemica user community on November 9, 2021, to assuage any customer fears over an interruption or discontinuation of Elemica's services. (Ex. F).  The Muse Email also referenced this lawsuit.  Conexiom filed a counterclaim for defamation *per se* alleging certain statements in this email were defamatory and "maligned [Conexiom's] trade, business, reputation and profession."  (D.I. 39, ¶ 34).

In this Court's Memorandum Opinion addressing Elemica's motion to dismiss and/or strike Conexiom's counterclaims, the Court found that three allegedly defamatory statements in the Muse email were actionable. (D.I. 51, at 7-9).  Conexiom's Supplemental Rule 26 Disclosures (Ex. G, at 5), Conexiom's Supplemental Answers to Elemica's First Set of Interrogatories (Ex. H, at 5-6), and 30(b)(6) witness designated to testify on the topic of damages identified no damages resulting from these statements.  (Ex. I, at 11:15-19).  Further, no evidence was produced in discovery that Conexiom's reputation was harmed in any way by these

statements.

  **B.  Amendment # 6 and the Deactivation of Trading Partners**

  The Rollout Agreement was amended several times during its life, primarily to extend its term.                                                                                          (Ex. D).




              (Ex. J).










  According to Conexiom, Elemica breached the Agreement by accepting this unintended discount even though it allegedly deactivated these trading partners (or SpokeCos).  (D.I. 39, ¶¶ 19-26; D.I. 45, at 8-9).  Conexiom's theory is that the Credit was designed to create the reduced fees                                                      , and therefore Elemica's deletion of them amounted to double-dipping while also taking the Credit.  (D.I. 39, ¶¶ 19-26; D.I. 45, at 8-9).  Under this theory, Conexiom asserts that the Credit applies to                                                      .  Elemica disputes that the Credit has any tie to specific trading partners.  Even if it did, Elemica disputes that Conexiom is identifying                                              in this litigation.

In discovery,

Rather, Elemica had to make a request to Conexiom, which Conexiom had to affirmatively approve for deactivation and removal. Conexiom alone deactivated trading partners from its production environment, not Elemica. John Cadigan (Vice President, Cloud Operations and CSO at Conexiom), testified that during this litigation,

Thus, there can be no confirmation as to

### IV.   ARGUMENT

The purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a genuine issue of material fact exists will be determined by asking if a reasonable jury could return a verdict for the non-moving party. *Id.*

The nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Celotex*, 477 U.S., at 322-23. Instead, to defeat summary judgment, "the non-moving party must produce admissible evidence containing specific facts showing that there is a genuine issue for trial." *Vitalo v. Cabot Corp.*, 399 F.3d 536, 542 (3d Cir. 2005) (internal quotation omitted).

---

[1] As a result of technical issues experienced during the deposition of John Cadigan, the deposition transcript is divided into two volumes (Vol. 1 and Vol. 2). Vol. 2 is labeled as such.

### A. Conexiom's defamation claim fails because it has no evidence of special damages or reputational harm

"The general rule is that any publication which is libelous on its face is actionable without pleading or proof of special damages" under a defamation *per se* theory. *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978). However, "to proceed on defamation *per se* without proof of special damages, plaintiff still must provide evidence of diminution in reputation." *Preston Hollow Capital LLC v. Nuveen LLC*, C.A. No. N19C-10-10, 2022 Del. Super. LEXIS 264 at *9 (Del. Super. Ct. June 14, 2022).

Conexiom has not identified any special damages. In Conexiom's Supplemental Rule 26 Disclosures dated January 11, 2024 (after discovery closed - *see* D.I. 121), it stated that "[d]amages arising out of Elemica's defamatory statements – Unknown at this time. Investigation continues." (Ex. G, at 5). Additionally, in Conexiom's Supplemental Answers to Elemica's First Set of Interrogatories, also dated January 11, 2024, Conexiom did not identify any special damages relating to its defamation claim. (Ex. H, at 5-6). At the end of its response to Interrogatory No. 5, Conexiom noted that "claims for defamation *per se* do not require proof of special damages under Delaware law. Investigation continues." *Id.* at 6. Further, Conexiom's 30(b)(6) witness who was designated to testify on topic twenty-five, "any damages claimed by Conexiom in this case[,]" (D.I. 129; Ex. I, at 9:2-24) was ***only*** put forth to testify on Conexiom's damages for its breach of contract counterclaim. (Ex. I, at 9:19-24). At the deposition,

No supplement was ever produced, in any form, to identify defamation damages.

6

While Conexiom is correct that defamation *per se* may be actionable without proof of special damages, such a claim requires evidence of reputational harm. *Preston Hollow Capital LLC*, 2022 Del. Super. LEXIS 264 at *19 ("Plaintiff need not prove special damages. However, Plaintiff must prove injury to reputation in lieu of special damages.").

To show reputational harm, Conexiom "must show that the defamatory statements tend to prejudice the corporation in its business or to deter others from dealing with it." *Q-Tone Broadcasting, Co. v. Musicradio of Maryland, Inc.*, C.A. No. 93C-09-021, 1994 Del. Super. LEXIS 453 at *10 (Del. Super. Aug. 22, 1994) (citing Restatement (Second) of Torts § 561). In *Preston Hollow Capital LLC v. Nuveen LLC*, the Superior Court explained that "[w]hen determining whether a Plaintiff has demonstrated any loss to reputation, 'it must be measured by the perception of others, rather than that of the plaintiff [ ] because reputation is the estimation in which one's character is held by [ ] neighbors or associates.'" 2022 Del. Super. LEXIS 264 at *11 (quoting *Synygy, Inc. v. ZS Associates, Inc.*, 110 F. Supp. 3d 602, 616 (E.D. Pa. 2015)).

Conexiom has not produced any evidence demonstrating that its reputation was negatively impacted in the eyes of third parties by Elemica's allegedly defamatory statements. There is simply no evidence in the record from any third party opining on Conexiom's reputation, either positively or negatively, or describing the third party's perception of Conexiom's reputation.

In sum, because Conexiom has no proof of special damages or any evidence of reputational harm, Elemica should be granted summary judgment on Conexiom's defamation *per se* claim.

### B. Elemica Did Not Breach Any Contractual Obligation Under Amendment # 6

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the

7

plaintiff." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).  Conexiom's counterclaim for breach of contract fails because there is no dispute that Elemica performed its obligations under the contract.

The four corners of the contract and the undisputed facts demonstrate that Elemica did not breach any contractual obligation under Amendment # 6.  Elemica fully paid Conexiom for its services under the contract and Amendment # 6 was not breached.  Amendment # 6 (Ex. D) did not specify that Elemica must pay full price for any specific trading partners and Elemica paid Conexiom in full under the terms of the Agreement.

  1. <u>The bargained-for discount applies regardless of whether trading partners are deactivated in the database.</u>

Conexiom asserts Elemica failed to pay in accordance with a credit granted by Conexiom.

*See* Amendment # 6 (Ex. D).  No portion of the "Credit" formula is ambiguous and no portion was tied to the presence or absence of any particular trading partners in the database.  Previously, this Court found that "1,300 is indeed just a constant number, not a variable. Its value cannot change. It simply acts as a multiplier for P (the given percentage) and F ("CONEXIOM Fees")".

(D.I. 51 at 5).  Neither party disputes that "P" is clearly defined.  The Court thought "F" might be ambiguous at the pleadings stage (*Id.*), but now that discovery is complete, there is no ambiguity because Conexiom's witnesses testified                      .  Conexiom's 30(b)(6) witnesses Mark Toffoli and Monika Brar testified that

Amendment # 6 (Ex. D).

Based on this unambiguous language, there is ***no*** limitation or restriction within Amendment # 6 as to which trading partners the credit applies, or that it applies to trading partners at all –

Amendment # 6 was drafted by Conexiom, a sophisticated company with outside counsel.  Conexiom could have drafted Amendment # 6 the way it wishes it read today, but it did not.

Conexiom calculated the credit correctly for 2019,

9

See Amendment # 6 (Ex. D).  However,

In or about April 2021, Elemica realized it was being billed incorrectly and was overpaying, and therefore, withheld a portion of the payment to account for the properly calculated discount.  (Ex. N, at 1-2).  It was only after Elemica began to withhold money due to Conexiom's incorrect calculation of the discount that Conexiom came up with the excuse that Elemica was improperly deactivating trading partners.  (Ex. O, at 1-2).  Conexiom never provided formal notice of Elemica's supposed breach from January 2020 until October 2021 (Ex. N, at 2-3), after the present litigation was filed in June 2021.  (D.I. 1).

Elemica did not breach a contractual obligation under the Agreement by requesting the deactivation of trading partners from Conexiom's production environment.  Amendment # 6 does not require trading partners to be maintained to apply the credit formula.  Therefore, as a matter of law, Elemica was entitled to take the discount and deletion of trading partners does not impact the discount.

   2. <u>Assuming *arguendo* Elemica was only entitled to a discount as long as it did not delete certain trading partners, Conexiom waived this requirement.</u>

"It is well settled in Delaware that contractual requirements or conditions may be waived."  *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A2d 428, 444 (Del. 2005).  Assuming *arguendo* there was a restriction in the Rollout Agreement and Amendment # 6 on deleting certain trading partners, Conexiom waived its right to enforce such requirement.  "A

contractual requirement or condition may be waived where (1) there is a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition." *Id.* at 445.

      Conexiom asserts there is a requirement that Elemica may not deactivate a specific set of ▓▓▓▓▓▓▓▓▓▓, satisfying the first element of waiver. (Doc. 39, ¶ 26). The second element, that Conexiom must know of the requirement, is also clearly met because Conexiom asserts that Elemica violated the requirement and because Conexiom never provided Elemica with any capability to delete trading partners. (Doc. 39, ¶ 26; Ex. K at Vol. 2, 11:2-12:13; Ex. L at 79:4-18). Conexiom intended to waive this requirement because Conexiom alone deactivated all trading partners in response to Elemica's requests and did so for years without complaining.

      Conexiom had to approve Elemica's requests to deactivate or remove a trading partner and therefore, Conexiom affirmatively consented to any deactivations of trading partners by alone deactivating the trading partners. There was no mechanism in place to allow Elemica to unilaterally deactivate and/or remove trading partners, which Conexiom's witnesses confirmed.

      Internal emails among Conexiom employees and officers from October and November 2020 show that Conexiom was aware of Elemica's requests to deactivate trading partners. (Ex. P, at 4-7). Additionally, the contractual obligations of Amendment # 6 were discussed in this same email exchange. *Id.* at 1-4. As stated above, Conexiom did not believe there was an issue with the deactivation of the trading partners until after this lawsuit was filed in June 2021. Conexiom's failure to object and its voluntary deactivation of trading partners demonstrates Conexiom's intention to waive any restriction regarding the deactivation of trading partners.

11

3. <u>Elemica is entitled to an adverse inference because Conexiom spoliated critical evidence during this litigation.</u>

If the Court finds there is a dispute of fact with respect to Conexiom's counterclaim, an adverse inference is appropriate regarding Conexiom's spoliation of the Elemica database during the litigation. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

Conexiom's 30(b)(6) witness designated to testify to topics involving document preservation and production, John Cadigan (Vice President, Cloud operations & CSO at Conexiom),

.

, thereby ***spoliating critical evidence*** related directly to Conexiom's counterclaim for breach of contract and Elemica's defense to that counterclaim. (Ex. K, Vol. 2, at 12:11-14:18). Conexiom was clearly in control of the database because the database was Conexiom's and on Conexiom's servers. The evidence in the database is relevant to this litigation because there is no documentary evidence of who requested trading partners to be deactivated, when the deactivations occurred, who performed the deactivations, or which trading partners were deactivated, if any. Further,

. Conexiom ***spoliated the entire database*** that is the subject of their counterclaim, when it should have either maintained the database or ensured the database was backed up prior to removing it. The duty to preserve the evidence at the time Conexiom deleted its database was reasonably foreseeable considering the litigation was already ongoing and the

12

deactivation of trading partners within this database was directly in dispute. Accordingly, Conexiom spoliated evidence necessary to prove or defend against its counterclaim for breach of contract of Amendment # 6.

When determining whether to impose a sanction for the spoliation of evidence the court considers the following three factors:

> 1) the degree of fault of the party who altered or destroyed the evidence;
> 2) the degree of prejudice suffered by the opposing party; and
> 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

All three factors weigh in favor of granting an adverse inference against Conexiom. Conexiom's degree of fault is significant – it did not take the necessary steps to back up the database and instead deleted the database during the litigation. Elemica is prejudiced because it is limited to relying on witness testimony for its defense to Conexiom's breach of contract counterclaim rather than direct documentary evidence. An adverse inference is appropriate because it is a less severe sanction than dismissing Conexiom's counterclaim, particularly considering Conexiom's total disregard for preserving documents for this litigation and ***spoliation of an entire database*** referred to by Conexiom's witness as the [Elemica] database. (Ex. K, Vol. 2, at 12:11-14:18). *See Wagner v. Sea Esta Motel I,* 2014 U.S. Dist. LEXIS 118462, at *6 (D. Del. Aug. 26, 2014) ("An adverse inference instruction is a mild sanction compared to the alternatives, such as judgment against the spoliating party, suppression of evidence, fines, or a dismissal of the spoliating party's claim.").

Accordingly, Elemica respectfully requests that the Court find that Conexiom spoliated key evidence and that Elemica is entitled to an adverse inference that the evidence was detrimental to Conexiom's breach of contract counterclaim. Specifically, if Amendment # 6 related to 1300 specific trading partners, Elemica is entitled to an adverse inference that the database contained evidence that Elemica did not deactivate any of the 1300 specific trading partners allegedly associated with Amendment # 6.

V.      **CONCLUSION**

For the reasons stated above, Elemica respectfully requests that the Court enter summary judgment in its favor on Conexiom's counterclaims for defamation *per se* and breach of contract.

Dated: April 10, 2024                                               Respectfully submitted,

                                                                    PANITCH SCHWARZE BELISARIO &
                                                                    NADEL LLP

                                                            By:     */s/ John D. Simmons*

                                                                    John D. Simmons (#5996)
OF COUNSEL:                                                         Dennis J. Butler (#5981)
                                                                    Keith A. Jones (#7011)
Stephen E. Murray (admitted *pro hac vice*)                         Ava E. Lutz (admitted *pro hac vice*)
PANITCH SCHWARZE BELISARIO &                                        Wells Fargo Tower
NADEL LLP                                                           2200 Concord Pike, Suite 201
Two Commerce Square                                                 Wilmington, DE 19803
2001 Market Street, Suite 2800                                      Telephone: (302) 394-6001
Philadelphia, PA 19103                                              jsimmons@panitchlaw.com
smurray@panitchlaw.com                                              kjones@panitchlaw.com
                                                                    alutz@panitchlaw.com

                                                                    ***Counsel for Plaintiff/Counter-Defendant***
                                                                    ***Elemica, Inc.***