**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ELEMICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ECMARKET, INC. d/b/a CONEXIOM INC.,<br><br>Defendant. | C.A. No. 21-893-SB<br>**PUBLIC VERSION FILED May 17, 2024** |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS IN PLAINTIFF'S AMENDED AND SUPPLEMENTAL COMPLAINTS**

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Megan E. O'Connor (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
megan.oconnor@klgates.com

*Counsel for Defendant ecMarket, Inc.*

*Of Counsel:*

Richard A. Saldinger
LANDSMAN SALDINGER CARROLL, PLLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
Phone: (312) 291-4652
saldinger@lsclegal.com

Dated: May 10, 2024

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................1

II. ARGUMENT ....................1

A. Elemica Ignores The Applicable Legal Standards For Summary Judgment. ..........1

B. ecMarket Did Not Need Nor Use Elemica's Trade Secrets. ....................3

C. Elemica Relies On Inferences and Circumstantial Evidence Rather Than Admissible Facts In The Record. ....................3

D. ecMarket Did Not Use Elemica's Confidential Information Or Trade Secrets In Soliciting DuPont. ....................6

E. Elemica Did Not Suffer Any Recoverable Damages. ....................8

F. The Names of Elemica Customers Using Conexiom Are Not Confidential. ..........8

G. There Is No Evidence Of An "Elemica Campaign." ....................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CertainTeed Corp. v. BIPV, Inc.*,
2017 U.S. Dist. LEXIS 65645 (E.D. Pa. May 1, 2017) ....................9

*Daubert v. NRA Group, LLC*,
861 F.3d 382 (3d Cir. 2017)....................2, 4

*Jugan v. Econ. Premier Assurance Co.*,
728 F.App'x 86 (3d Cir. 2018) ....................4

*Leonard v. Stemtech Health Scis., Inc.*,
2011 U.S. Dist. LEXIS 139221 (D. Del. Dec. 5, 2011)....................2

*MacQueen v. Union Carbide Corp.*,
246 F. Supp. 3d 1010 (D. Del. 2017)....................2

*Peloton Interactive, Inc. v. iFIT Inc.*,
2022 U.S. Dist. LEXIS 86777 (May 13, 2022) ....................3

*Podobnik v. United States Postal Service*,
409 F. 3d 584 (3rd Cir. 2005) ....................2

*Sado v. Leland Mem. Hosp.*,
933 F. Supp. 490 (D. Md. 1996)....................2

*Smith v. City of Allentown*,
589 F.3d 684 (3d Cir. 2009)....................4

*Tolliver v. Trinity Par. Found.*,
2017 U.S. Dist. LEXIS 121764 (D. Del. Aug. 2, 2017) ....................4

*White v. Brown*,
408 Fed. Appx. 595 (3d Cir. 2010)....................4

*Williams v. West Chester*,
891 F.2d 458 (3d Cir. 1989)....................5

**Other Authorities**

Fed. R. Civ. P. 56....................1, 2

Fed. R. Civ. P. 30(b)(6)....................3, 6

## I. INTRODUCTION

Elemica is long on conjecture and speculation, but short on admissible facts let alone genuine issues of material fact relevant to the disposition of Elemica's claims. Elemica swore under oath to this Court (*see* Dkt. 63) and in its interrogatory responses that: (1) ecMarket misappropriated and disclosed Elemica's trades secrets and confidential information to seven different customers; (2) made false and misleading statements to Elemica's customers in violation of the DUDTPA; and (3) suffered damages in connection with three customers: DuPont, Honeywell and AmSty. *See* Opening Brief ("Op. Br.") at Exs. 22, 23. As confirmed through discovery, Elemica did not have, and still does not have, evidence supporting those sworn statements. *See* Op. Br. 9-11. Elemica's willingness to make sworn statements without evidence should not be disregarded or condoned. Elemica has now withdrawn its claim for damages relating to Honeywell and AmSty, and withdrawn its DUDTPA claim. As Elemica admits, its "case relates solely to damages resulting from Conexiom's actions with [respect to] DuPont." Resp. at 1.

As ecMarket demonstrated in its opening brief, there is no admissible evidence ecMarket misappropriated Elemica's "trade secrets" or disclosed "confidential" information in connection with its efforts to obtain DuPont's business. In response, Elemica improperly seeks to shift the burden to ecMarket to prove it did nothing wrong. This is contrary to Fed. R. Civ. P. 56 and applicable law. The parties were free to compete for DuPont's business. Similarly, DuPont was free to seek financial concessions from Elemica and ecMarket, and perhaps did so by leveraging the competing proposals. There is nothing wrong with such a common business practice. What is wrong is Elemica filing a lawsuit against ecMarket seeking damages without a factual or legal basis to inhibit fair competition.

## II. ARGUMENT

### A. Elemica Ignores The Applicable Legal Standards For Summary Judgment.

Elemica has failed to muster any proof on essential elements of its case, so it improperly

attempts to shift the burden of proof to ecMarket to prove it did nothing wrong. *See Daubert v. NRA Group, LLC,* 861 F.3d 382, 391 (3d Cir. 2017) (after movant demonstrated no evidence in the record supporting plaintiff's claim, burden properly shifts to nonmovant to designate specific facts in the record showing genuine issue for trial; District Court did not improperly "flip" summary judgment standard, "Rule 56 did.")

Elemica seeks to create a genuine issue of material fact ***solely*** through inferences unsupported by admissible evidence. While courts can draw reasonable inferences in favor of the nonmoving party, "they are not permitted to stack inference upon inference to preserve an issue for the jury." *Leonard v. Stemtech Health Scis., Inc.*, 2011 U.S. Dist. LEXIS 139221, *27 (D. Del. Dec. 5, 2011); *Sado v. Leland Mem. Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996) (same). "[I]nferences must be supported by facts in the record, not by 'speculation or conjecture.'" *Leonard,* at *27 citing *Miles v. Jones,* 2010 U.S. Dist. LEXIS 139617 (S.D. Fla. Nov. 22, 2010).

Elemica must "do more than simply show that there is some metaphysical doubt as to the material facts." *MacQueen,* 246 F. Supp. 3d at 1008 quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *see also Podobnik v. United States Postal Service*, 409 F. 3d 584, 594 (3rd Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") Critically, ecMarket "cannot, of course, prove the non-existence of a fact. Rather, a defendant may satisfy its initial burden by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *MacQueen v. Union Carbide Corp.,* 246 F. Supp. 3d 1010, 1011 (D. Del. 2017) quoting *Singletary v. Pa. Dep't of Corr.,* 266 F. 3d 186, 192 n.2 (3rd Cir. 2001). ecMarket has done so here.

**B. ecMarket Did Not Need Nor Use Elemica's Trade Secrets.**

In its response, Elemica suggests (without evidence) ecMarket would both need and use Elemica's proprietary flat-file format or business process in its solicitation of DuPont or any other prospective customer (who was using Conexiom through QuickLink). Resp. at 9-10. This argument is disingenuous and without merit. As set forth in the Rollout Agreement, Elemica "require[d]" ecMarket's technology to "enable Customers to receive orders from their spokecos electronically." *See* Op. Br. at Ex. 5 ("Purpose"). ecMarket never required or needed Elemica's proprietary software. As Mark Toffoli (ecMarket's Rule 30(b)(6) witness explained:

> "Q: What is the process that Conexiom uses to convert orders into information that the customers can use in their ERP software?
>
> --------
>
> A: So the process we use is to have the customer provides us with samples of the documents they want to convert into information they can use in their ERP, their requirements for the information they want to gain from those documents. We then code our solution using our proprietary intellectual property to transform those documents . We then code our solution using our proprietary intellectual property to transform those documents into a structured file that their ERP can consume. And we then deliver that structured file to the – endpoint that that custom can pick up and consume it into their ERP …"

Op. Br. at Ex. T (Toffoli), p.33, l.7 – p.35, l.11. Toffoli confirmed the "Maps" created by ecMarket were ecMarket's "intellectual property" ecMarket used to transfer a PDF into structured data. *Id.*, p.36, ll.11-25, p.37, ll.17-23. At bottom, the undisputed evidence is ecMarket did not need nor use Elemica's technology in soliciting DuPont nor any other prospective customer, and Elemica cannot demonstrate otherwise. *Id.* p.38, ll.10-18, p.94, ll.3 – p.95, l.10.

**C. Elemica Relies On Inferences and Circumstantial Evidence Rather Than Admissible Facts In The Record.**

The vast majority of Elemica's response relies on inferences and circumstantial evidence rather than *affirmative* evidence of wrongdoing in the record. This is insufficient. *See Peloton Interactive, Inc. v. iFIT Inc.*, 2022 U.S. Dist. LEXIS 86777, **14-15 (May 13, 2022) (plaintiff's trade secret misappropriation claim against competitor based on speculation and circumstantial

evidence; insufficient to defeat summary judgment). Still further, Elemica avers "facts" with no citations to the record and citations that do ***not*** support what Elemica avers in its response. "Averments that are 'entirely unsupported by the record and directly contrary to … testimony,' or that are 'offered solely to defeat summary judgment,' may be disregarded." *Jugan v. Econ. Premier Assurance Co.*, 728 F.App'x 86, 91 (3d Cir. 2018) (quoting *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017)).

By way of example, Elemica provides no citations to support the following "facts:"

> "Conexiom had knowledge of and used Elemica's proprietary flat-file format and fields for [] storing DuPont customer purchase order information." Resp. at 3. "Conexiom had knowledge of DuPont's needs and requirements and Elemica's proprietary flat-file format. Conexiom used this Confidential Information to solicit DuPont in a way that would not have been possible but for using Confidential Information." Resp. at 17.

> "Conexiom was a service provider for a small percentage of the processing transactions through one sub-product of Elemica's QuickLink software – QuickLink Email Sell." Resp. at 3-4.

> "Any employee who straddled both sides of this line [allegedly providing Conexiom to DuPont through Elemica ***and*** being involved in ecMarket's sale pitch to DuPont] necessarily used Confidential Information in the solicitation of DuPont, as one generally cannot unlearn things he or she has learned." Resp. at 5-6.

> "Elemica became aware of Conexiom's improper solicitations through customers who reached out with fears of losing access to Elemica products." Resp. at 6.

> "The onboarding capabilities Conexiom was offering DuPont show that Conexiom was using Elemica's confidential information regarding DuPont's needs and requirements within QuickLink Email Sell …." Resp. at 17-18.

Without citations to the record, the foregoing facts should be disregarded.

In other instances, Elemica's citations do not support the alleged "facts" and/or contain inadmissible hearsay. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) (hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment); *White v. Brown*, 408 Fed. Appx. 595, 599 (3d Cir. 2010) (inadmissible hearsay cannot be used to overcome summary judgment); *Tolliver v. Trinity Par. Found.*, 2017 U.S. Dist. LEXIS

121764, *43 (D. Del. Aug. 2, 2017)(same).

Again, by way of example only:

In a July 2020 email, Ray Grady indicated to SalesForce that ecMarket wanted to "take" or "poach" Elemica's customers. Resp. at 2, 5 citing Ex. I. ***Ex. I does not indicate that Grady said any such thing to SalesForce.***

DuPont was not an ecMarket prospective customers until September 2016 when it was added to ecMarket's contact resource management (CRM) database Resp. at 4 citing Exs. V, W. ***Ex. W does not support this alleged fact, and Mark Toffoli (ecMarket) testified that DuPont was a potential customer back in 2006 when DuPont introduced ecMarket to Elemica.*** *See* Op. Br. Ex. 1 (Toffoli), p.88, l.23 – p.90, l.25.

Ryan Borland was aware of Conexiom's claims that its software was faster than Elemica's, "a claim that would have been difficult for Conexiom to make without its knowledge of Elemica's confidential processes." Resp. at 6 citing Ex. JJ, 49:10-21. ***This is inadmissible hearsay. At his deposition, Borland: (i) could not identify who at DuPont told him about Conexiom's efforts to solicit DuPont's E&I unit (see Op. Br. at Ex. 25, p.48, ll.12-15; (ii) admitted he did not have a factual basis for his statement, and did not know what information DuPont had provided to Conexiom (Id., p.49, l.22 – p.50, l.8, p. 51, ll. 5-14); and (iii) admitted he never worked at Conexiom, and he based his opinion regarding Conexiom's speed on what one of his colleagues allegedly thought. (Id., p.51, ll. 16-18, p.53, l.10 – p.54, l.19).***

"At [a June 29, 2021 meeting], DuPont asked questions about DuPont data Conexiom has access to through Elemica and if the leveraging or sharing of data is going to continue. (Ex. GG)." Resp. at 7. ***This citation is inaccurate and inadmissible hearsay.***

"An internal DuPont email confirms the correlation between Conexiom and Elemica's price concessions … (Ex QQ)." Resp. at 7-8. ***Ex. QQ is inadmissible hearsay.***

"[M]any customers inferred" that "Elemica's entire QuickLink suite" was ending as of March 2022. Resp. at 8 citing Ex. Q. ***Ex. Q does not support this statement and what unidentified customers "inferred" is inadmissible hearsay.***

Relying on *Williams v. West Chester*, 891 F.2d 458 (3d Cir. 1989), Elemica argues circumstantial evidence is sufficient to rebut summary judgment. Resp. at 17. However, in granting summary judgment to the defendant, the *Williams* court held a plaintiff cannot prevail by attempting to discredit testimony. *Williams*, 891 F. 2d at 460. Rather, the plaintiff "must present *affirmative* evidence [to] defeat a properly supported motion for summary judgment. *Id.* (emphasis in original) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). The *Williams* court found plaintiff's circumstantial evidence was "tenuous" and insufficient to

survive summary judgment. *Williams*, 891 F.2d at 466. Elemica should suffer the same fate.

**D. ecMarket Did Not Use Elemica's Confidential Information Or Trade Secrets In Soliciting DuPont.**

In its opening brief, ecMarket demonstrated the lack of any evidence indicating ecMarket used Elemica's allegedly "confidential" information or purported "trade secrets" during its solicitation of DuPont. *See* Op. Br. at 4-5 and exhibits cited therein. Despite its prior sworn statements to the contrary, Elemica now concedes it has no knowledge ecMarket disclosed any confidential information or trade secrets to DuPont, but argues its lack of such knowledge "makes sense" because "McAluney and Borland were not involved in the negotiations between Conexiom and DuPont." Resp. at 18.

Without direct evidence, Elemica improperly "stacks" a series of inferences and suggests a "reasonable juror" could find Elemica suffered damages because of ecMarket's alleged misappropriation of Elemica's trade secrets. Elemica infers that ecMarket's document production was incomplete because it allegedly failed to preserve documents for this litigation. Resp. at 7. This accusation is baseless. John Cadigan (ecMarket's Rule 30(b)(6) witness) testified ecMarket's standard policy is to preserve ***all*** email communications. *See* Ex. A (Cadigan Dep. Transcript, Vol. I), p.15, l.23 – p.16, l.10, p.16, l.23 – p.17, l.15. Mr. Cadigan also confirmed he conducted the email searches requested by Elemica without any issues or restrictions. *Id.*, p. 18, ll. 9-16, p. 20, l.5 – p. 21, l. 4; *see also* Ex. B (Elemica's requested email search). Elemica's inference that ecMarket withheld relevant evidence lacks merit.[1]

Elemica infers wrongdoing because ***ecMarket*** did not introduce evidence that "[Hank] Lish and others … were walled off from Elemica's Confidential Information before they unabashedly

[1] ecMarket's deleted outdated Elemica data ***after*** the parties' relationship ended, but that data had no connection whatsoever to ecMarket's efforts to obtain DuPont's business. *See* Ex. C. Elemica knows this to be true, but still suggests ecMarket deleted "key evidence." Resp. at 7, fn. 3.

shared confidential information with SalesForce and DuPont." Resp. at 5. There is no admissible evidence ecMarket shared confidential information with either SalesForce or DuPont in connection with ecMarket's sales efforts. Further, Lish testified he did ***not*** have access to Elemica's "confidential information" and did not use it in any of his solicitation of prospective customers, including DuPont. *See* Op. Br., Ex. 11 (Lish), p.144, l. 11 – p.145, l.15. Lish testified that:

> "All the information that we used throughout the RFP process and the proposal process was shared with us from – shared with us from DuPont.
> Q. In your efforts to bring in DuPont as a customer, did you handle your efforts to bring in DuPont in any way different than any other Conexiom prospect who you're giving a sales pitch to?
> A. No. Same process. Exactly the same process.
> Q. As far as DuPont's needs, requirements, what they were looking for, was that information DuPont provided to you in the course of that sales proposal?
> A. Yes.
> ----------
> Q. At any point in time, did Conexiom try to differentiate itself in any way from Elemica?
> A. I would say we did. But it was only based on information that we know from the marketplace. Just like any other competitor.
> Q. So when you were differentiating yourself from Elemica in any conversations you had on that topic with DuPont, to be clear, did you use any information about Elemica that had been obtained solely through Conexiom's relationship with Elemica?
> A. No, we did not."

*Id.* at Ex. 11, p.145, l.16 – p.149, l.9.

If Elemica did not believe Lish's testimony, it could seek evidence of misappropriation through discovery from third parties, including DuPont. <u>Elemica made no effort whatsoever to do so</u>. Rather, ***ecMarket*** issued a third-party subpoena to DuPont seeking documents relevant to this litigation. *See* Ex. D. In response, DuPont produced more than 20,000 pages of documents. *See* Ex. E. However, consistent with Lish's testimony, not a single document evidences ecMarket's use of an Elemica "trade secret" or disclosure of confidential information.

Elemica also did not seek to take the depositions of any current or former employees of DuPont nor did it seek to issue document subpoenas or take the depositions of other customers ecMarket allegedly solicited using Elemica's confidential information. Incredibly, after ecMarket

obtained an affidavit from DuPont (*see* Op. Br., Ex. 9) – an affidavit that refutes Elemica's claims – Elemica turned down the opportunity to depose Mr. Carrow. *See* Ex. F. Instead, Elemica seeks to strike the DuPont Affidavit (*see* Dkt. 151). Elemica's failure to seek admissible evidence to satisfy its burden of proof is an additional reason it cannot "stack inferences" to avoid summary judgment.

**E. Elemica Did Not Suffer Any Recoverable Damages.**

Elemica argues DuPont used ecMarket's response to DuPont's RFP as leverage to force Elemica to make additional concessions. Resp. at 19-20. Elemica, however, has no admissible evidence DuPont did any such thing, as its citations to testimony and emails contain inadmissible hearsay. *Id.; see also* Resp. at Exs. HH, NN, QQ. In any event, it is a common business practice for a customer to use one competitor's involvement to leverage better pricing from another competitor. ecMarket was free to solicit DuPont, as there was no non-compete agreement. Elemica's alleged concessions to DuPont do not create liability for ecMarket or a genuine issue of material fact precluding summary judgment with no evidence ecMarket misappropriated "trade secrets" or revealed "confidential" information during its solicitation of DuPont.

**F. The Names of Elemica Customers Using Conexiom Are Not Confidential.**

The names of Elemica's customers using Conexiom through QuickLink were neither "confidential" nor "trade secrets." *See* Op. Br. at 11-12. The termination date of the Rollout Agreement was also not "confidential" because, *inter alia,* Elemica itself disclosed to others it was replacing Conexiom with OmPrompt and that its relationship with ecMarket was ending. *Id.* at 13-14. The end date of the parties' contract also had no "independent economic value" to Elemica. *Id.*

Elemica argues it does not publicize exactly which solutions/services are used by its customers and "QuickLink Email Sell" is different from QuickLink. Resp. at 5, 13. However, Elemica fails to create a genuine issue of material fact with any *affirmative* evidence refuting the

evidence that: (i) the letter and spirit of the parties' relationship and agreement allowed ecMarket to publicize its relationship with Elemica and the integral use of Conexiom as part of Elemica's QuickLink solution; (ii) Elemica itself publicized the names of its customers and products on its website and in press releases; (iii) Elemica's form Master Agreement allowed Elemica to publish its "relationship" with its customers and "Elemica Services" provided to those customers; (iv) Elemica itself disclosed to customers that they were using Conexiom; and (v) Elemica allowed its customers to publicize their use of Elemica and its products. Op. Br. at 11-13, Exs. 3, 5-7, 26-27, 29, 31-32, 35-37. This evidence belies Elemica's claim that names of customers using Conexiom through QuickLink and/or QuickLink Email Sell were confidential or "trade secrets".

Elemica tries to explain away the foregoing evidence *(see* Resp. at 14-16), and baldly asserts "there is more than enough evidence from which a jury could find that Conexiom knew of and used Elemica's trade secrets." Resp. at 19. Relying on *CertainTeed Corp. v. BIPV, Inc.*, 2017 U.S. Dist. LEXIS 65645, *15 (E.D. Pa. May 1, 2017), Elemica argues "generally, its for a jury to decide whether a piece of information is a trade secret." *Id.* quoting *CertainTeed Corp.* However, in the very next sentence, the *CertainTeed Corp.* court stated "factual issues are subject to summary judgment whenever the law as applied to uncontroverted facts shows that the movant is entitled to summary judgment," and granted summary judgment to the defendant because the plaintiff failed to identify any trade secrets. *Id.* Similarly here, Elemica cannot refute uncontroverted facts demonstrating the names of customers utilizing Conexiom were neither confidential nor trade secrets that Elemica took "reasonable measures" to keep secret.[2]

Elemica also fails to explain how or why the termination date of the parties' Rollout

[2] Elemica criticizes ecMarket's use of the term "QuickLink" to identify the Elemica product using Conexiom. Resp. at 2, 4. However, Elemica itself refers to "QuickLink" as the product leveraging and using the Conexiom solution. *Id.* at Ex. 35; *see also* Elemica's Amended Complaint (Dkt. 33) at ¶¶ 35, 36.

Agreement would be "confidential" or provide "independent economic value" to Elemica. Elemica points to the generic definition of "Confidential Information" contained in ¶ 1(a) of the form MCA signed in 2007 – more than two years prior to the execution of the Rollout Agreement. Resp. at 16; *see* Op. Br. at Exs. 4, 5. However, even the definition in ¶ 1(a) of the MCA does not include the "termination date" of the parties' future contractual relationship.

**G. There Is No Evidence Of An "Elemica Campaign."**

Relying on a single email dated December 16, 2021 from Hank Lish and an innocuous February 2020 email (containing inadmissible hearsay) from ecMarket's former CEO, Elemica infers that as early as February 2020, there was an organized plan at ecMarket called the "Elemica Campaign" designed to compete with Elemica for the same customers. Resp. at 4, Exs. Y, Z. However, there is no admissible evidence supporting the existence of any such organized plan or campaign. There were thirty-eight (38) customers using Conexiom through Elemica, all of whom received the defamatory Muse Email. *See* Op. Br. at Ex. 23, pp.8-9. Yet, as evidence of this alleged campaign, Elemica points only to the solicitation emails sent by ecMarket in November 2021 to six (6) of these customers – less than 20% of the Elemica customer base using Conexiom – all of whom were also on ecMarket's Prospects List. at that time. Resp. at 5, Ex. AA; Op. Br. at Exs. 26-27. There is no evidence of a "multi-year campaign." Resp. at 8.

ecMarket was free to solicit any of its prospective customers, even if those customers were using Conexiom through Elemica. Elemica does not and cannot argue otherwise. Prior to filing its lawsuit, Elemica improperly attempted to create a non-compete by demanding ecMarket refrain from soliciting any of Elemica's customers. *See* Op. Br. at Exs. 17, 20. When ecMarket refused, Elemica filed this lawsuit without evidence of improper conduct and attempted to create a non-compete through litigation. The defamatory Muse Email was a further attempt to stifle fair competition. At bottom, the existence of any "Elemica Campaign" is legally irrelevant.

Dated: May 10, 2024

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. O'Connor (No. 6569)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
megan.oconnor@klgates.com

*Of Counsel*:

Richard A. Saldinger
LANDSMAN SALDINGER
CARROLL, PLLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
Phone: (312) 667-1359
saldinger@lsclegal.com

*Counsel for Defendant ecMarket, Inc.*